IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00103-WJM-CBS

DAVID SCOTT KEY,
     Plaintiff,
v.

SCOTT McLAUGHLIN,
JOE WILLIAMS,
PAULA J. FRANTZ,
CATHIE HOLST,
SANDY VALENTINE, and
CAROL McCORMACK,
     Defendants.

---

## RECOMMENDATION ON PENDING MOTIONS TO DISMISS

---

Magistrate Judge Shaffer

PENDING before this court are Defendants Williams, Frantz, Holst, Valentine and

McCormack's (hereinafter "the collective defendants") Motion to Dismiss Second Amended

Prisoner Complaint (doc. #35), filed on October 15, 2010, and Defendant McLaughlin's Motion

to Dismiss Second Amended Prisoner Complaint[1] (doc. #53) filed on February 16, 2011.

Plaintiff Key filed his Answer to the collective defendants' Motion to Dismiss (doc. #44) on

December 17, 2010, and his Answer to Defendant McLaughlin's Motion to Dismiss (doc. #58)

on March 124, 2011.  Pursuant to an order of reference (doc. #21), dated August 4, 2010, and the

memoranda dated October 15, 2010 (doc. #36) and March 1, 2011 (doc. #56), the subject

---

[1]Defendant McLaughlin essentially "join[ed] the Motion to Dismiss Complaint filed by
Defendants Williams, Frantz, Holst, Valentine and McCormick . . . and incorporat[ed] the
arguments asserted therein."  Therefore, this Recommendation will refer generally to "the
Defendants" and not distinguish between the two pending motions.

1

motions were referred to this Magistrate Judge.  I have carefully reviewed the pending motions and related briefing, taken judicial notice of the entire file and considered the applicable case law.

## FACTUAL BACKGROUND

Mr. Key initiated this *pro se* action on January 11, 2010 with the filing of a Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 and a Prisoner Complaint, together with attached exhibits.  Plaintiff's original *pro se* Complaint seemingly asserted Eighth Amendment claims for "Unconstitutional Conditions of Confinement" and  "Deliberate Indifference to Medical Needs" against twelve named defendants, as well as "Job Board," "John Doe #1," "Jane Doe #1," "Nurse Staff" and "Mental Health Staff."[2]  The claims allegedly arose from actions that took place while Mr. Key was in the custody of the Colorado Department of Corrections as an inmate at the Buena Vista Correctional Facility.[3]  On March 10, 2010, Plaintiff Key was directed to "file an amended complaint that contains a short and plain statement of the statutory grounds for the Court's jurisdiction, states his claims clearly and concisely, asserts which constitutional rights were violated, and alleges specific facts demonstrating how each named defendant personally participated in the asserted constitutional violations."  *See* Order Directing Plaintiff to File Amended Complaint (doc. #7).  In the same Order, Mr. Key was warned that failure to file an amended complaint as directed could result in dismissal of his lawsuit.

---

[2]The original Complaint consisted of 37 pages, 241 numbered paragraphs and 19 attached exhibits.

[3]Mr. Key was released from Buena Vista Correctional Facility on October 28, 2010 and currently has a mailing address in Novato, California.

Plaintiff filed an Amended Prisoner Complaint (doc. # 12) on May 3, 2010, consisting of 29 pages and 116 numbered paragraphs.  The Amended Prisoner Complaint named twenty-six defendants and added a conspiracy claim and an apparent claim under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*  On June 22, 2010, this court found that Mr. Key's "amended complaint [was] vague, confusing and unnecessarily long."  *See* Order Directing Plaintiff to File Second and Final Amended Complaint (doc. #17).  Once again, Plaintiff was "reminded that it is his responsibility to present his claims in a manageable format that allows the court and the defendants to know what claims are being asserted and to be able to respond to those claims."  Mr. Key was given an additional thirty days to file "a second and final amended complaint that complies with the directives of [this court's] order."

Plaintiff filed his Second and Final Amended Prisoner Complaint (doc. #18) on July 23, 2010, suing six defendants in their individual and official capacities and asserting two claims for relief pursuant to 42 U.S.C. § 1983.  The first claim alleges the named defendants were deliberately indifferent to Mr. Key's medical needs associated with injuries he sustained prior to his incarceration with the Department of Corrections and arrival at Buena Vista Correctional Facility in August 2007.  Mr. Key contends that starting in December 2007, he made repeated, unsuccessful "requests for medical attention for serious pain and/or requests for treatment of anxiety and anger;" that when he was finally seen by a member of the medical staff (Defendant McLaughlin), he received a "grossly inadequate anti-flammatory (sic) for extreme, chronic pain [that] amounted to no relief at all;" that Defendants McLaughlin and McCormack (Plaintiff's case manager) refused to excuse Mr. Key from working in the prison kitchen; that Defendant Williams (the kitchen manager) refused to accommodate Plaintiff's physical limitations; and that

3

Defendants Frantz and Holst denied Mr. Key disability status under the ADA. The second claim

for relief alleges the named defendants conspired to deny Plaintiff "Federally Protected Civil

Rights."

## ANALYSIS

Defendants have moved to dismiss the Second and Final Amended Complaint on several

grounds pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

> Rule 12(b)(1) empowers a court to dismiss a complaint for lack of
> jurisdiction over the subject matter.  Dismissal under Rule 12(b)(1) is not a
> judgment on the merits of a plaintiff's case, but only a determination that the
> court lacks authority to adjudicate the matter.  A court lacking jurisdiction must
> dismiss the cause at any stage of the proceeding in which it becomes apparent that
> jurisdiction is lacking.  A Rule 12(b)(1) motion to dismiss must be determined
> from the allegations of fact in the complaint, without regard to mere conclusory
> allegations of jurisdiction.  The burden of establishing subject matter jurisdiction
> is on the party asserting jurisdiction.  Accordingly, Plaintiff in this case bears the
> burden of establishing that this court has jurisdiction to hear his claims.

*Stine v. Wiley*, 2008 WL 4277748, at *3 (D. Colo. 2008) (internal quotation marks and citations

omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under

Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view

these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 2010 WL

437335, *3 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic

recitation of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to

state a claim to relief that is plausible on its face."[4]  *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  493 F.3d 1174, 1177 (10th Cir. 2007).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation.  *Id.*

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. . . . However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777, at *2 (D. Colo. 2009) (internal quotation marks and citations omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).[5]

---

[4]Documents attached to the complaint as exhibits are part of the complaint and may be considered by the court when evaluating a Rule 12(b)(6) motion to dismiss.  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

[5]It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, _ U.S. _, 129 S.Ct. 1937, 1949-50 (2009).

Plaintiff's Second and Final Amended Complaint must be construed liberally because he is representing himself. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards that formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted).  However, a plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been pled. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### A.    *Liability Based Upon Defendants' Official Capacity*

To the extent that Mr. Key is suing Defendants in their official capacity, he is in reality attempting to impose liability on their employer, the Colorado Department of Corrections.  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988).  A suit against a state official in his or her official capacity is treated as a suit against the state.  *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991).  Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  Eleventh Amendment immunity extends to the states themselves and to those governmental entities that are "arms of the state." *Ambus v. Granite Board of Education*, 995 F.2d at 994.  States, state officials sued in their official

6

capacities, and governmental entities that are considered "arms of the state" are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties. The Colorado Department of Corrections is an arm of the state and thus is entitled to Eleventh Amendment immunity. If the Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). All claims against Defendants in their official capacity must be dismissed.

B.      *The Defense of Qualified Immunity*

Defendants have raised the defense of qualified immunity as to the claims asserted in the Second and Final Amended Complaint. Under the doctrine of qualified immunity, government officials are immune from civil damages liability for constitutional torts as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects defendants not only from liability, but also from suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Such immunity is qualified in that it does not obtain when otherwise immune officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 552 U.S. 1181 (2008).

This court must review Defendants' assertion of qualified immunity "under the

7

customary motion to dismiss standard." *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Id.*  However, the court is also mindful of the United States Supreme Court's

admonition that a ruling on the issue of qualified immunity should be made at the earliest

possible stage of the proceeding in order to preserve the protections of the privilege. *See Saucier

v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right.  Second, . . .
> the court must decide whether the right at issue was clearly established at the time
> of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted).  In determining whether a right is clearly established, the relevant inquiry

is "whether it would be clear to a [reasonable government official] that his conduct was unlawful

in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 202.  A reviewing court may

"exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand."

*Pearson*, 555 U.S. at 236.  "Qualified immunity is applicable unless the plaintiff can satisfy both

prongs of the inquiry." *Herrera*, 589 F.3d at 1070 (internal quotation marks and citation

omitted).  The plaintiff bears the burden of showing with particularity facts and law establishing

the inference that the defendant violated a clearly established federal constitutional or statutory

right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

The defense of qualified immunity also implicates the pleading requirements of Fed. R.

Civ. P. 8(a).  *Robbins v. Oklahoma,* 519 F.3d at 1248.  Qualified immunity insures that public

officials are not subjected to "'broad-ranging discovery' that can be peculiarly disruptive of

effective government."  *Anderson v. Creighton*, 483 U.S. at 646 n.6.

> Although we apply "the same standard in evaluating dismissal in qualified
> immunity cases as to dismissals generally," complaints in § 1983 cases against
> individual government actors pose a greater likelihood of failures in notice and
> plausibility because they typically involve complex claims against multiple
> defendants. . . . Without allegations sufficient to make clear the "grounds" on
> which the plaintiff is entitled to relief, it would be impossible for the court to
> perform its function of determining, at an early stage in the litigation, whether the
> asserted claim is clearly established.

*Robbins v. Oklahoma,* 519 F.3d at 1249.  The court will proceed to apply these standards to the

claims asserted in this case.

C.      *Plaintiff's Eighth Amendment Claim*

In moving to dismiss, Defendants argue that Plaintiff has failed to state a cognizable

constitutional violation.  More specifically, Defendants contend that the Second and Final

Amended Complaint does not allege sufficient facts to establish their deliberate indifference to

Plaintiff's health or safety, which is an essential element for relief under the Eighth Amendment.

Defendants suggest that Mr. Key has established nothing more than a difference of opinion with

his medical provider, Scott McLaughlin.

Title 42 U.S.C. § 1983 creates a cause of action where a  "person . . . under color of any

statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States or other person . . . to the deprivation of any rights,

privileges or immunities secured by the Constitution."  Section 1983 does not create any

substantive rights; rather, it creates only a remedy for violations of rights secured by federal

statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal quotation marks and citations omitted).

An Eighth Amendment violation may lie where the inmate complains of treatment that is merely delayed, rather than refused. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (D. Colo. 2000). To the extent a correctional officer is serving as a "gatekeeper" for medical personnel capable of treating an inmate's condition, he or she may be liable under the Eighth Amendment to the extent that they delayed or refused to fulfill that gatekeeper role. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d at 1211)). Moreover, an Eighth Amendment claim may arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel

10

capable of evaluating the need for treatment.  *Sealock v. Colorado*, 218 F.3d  at 1211.  The

Eighth Amendment may be violated if the professional "knows that his [or her] role in a

particular medical emergency is solely to serve as a gatekeeper for other medical personnel

capable of treating the condition, and if he [or she] delays or refuses to fulfill that . . . role due to

deliberate indifference." *Id*

A claim for deliberate indifference to serious medical needs has both an objective and a

subjective component.  *Hunt v. Uphoff*, 199 F.3d at 1224.  As to the first component, a medical

need is "serious" when it has been diagnosed by a physician as requiring treatment or where the

condition is so obvious that even a layperson would recognize the need for a doctor's attention.

*Sealock v. Colorado*, 218 F.3d at 1209.  With regard to the second component, "deliberate

indifference" requires a state of mind "more blameworthy than negligent," but this can be

"something less than acts or omissions for the very purposes of causing harm or with knowledge

that harm will result."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  It is a state of mind akin

to recklessness, and occurs when the defendant "knows of and disregards an excessive risk to

[the] inmate['s] health or safety."  *Id*. at 837.  It is not enough to show that a defendant provided

ineffective or even negligent medical treatment.  *DeShaney v. Winnebago County Dept. of Social

Services*, 489 U.S. 189, 198 n. 5 (1989);  *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir.

2008).  An Eighth Amendment violation arises only where a defendant subjectively knows of an

excessive risk to the plaintiff's safety, but nevertheless disregards that risk.  *Sealock v. Colorado*,

218 F.3d at 1209.

Mr. Key has alleged that he required medical treatment for "chronic pain" and "pre-

existing injuries" stemming from a plane crash and motorcycle wreck that occurred prior to his

incarceration with the Colorado Department of Corrections.  Plaintiff claims that he experienced

"pain from injuries to the lower back, right hip, broken pelvis with pins and plate.  *See* Second

and Final Amended Complaint, at ¶¶ 1-2.  At this juncture, I find that the Second and Final

Amended Complaint describes a medical condition that might be recognized as serious and

contains sufficient factual allegations to support the objective component of an Eighth

Amendment claim.[6]  *See Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (quoting

*Sealock v. Colorado*, 218 F.3d at 1210 (Although "not every twinge of pain suffered as a result

of delay in medical care is actionable," when the pain suffered during the delay is substantial, the

prisoner "sufficiently establishes the objective element of the deliberate indifference test.")

(*overruled on other grounds, Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).

For a prison official to be found liable for deliberate indifference, "the official 'must

know[] of and disregard [] an excessive risk to inmate health and safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of harm exists, and

he must draw the inference."  *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th

Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Mr. Key must present

evidence sufficient to support an inference that Defendants knew about and disregarded a

substantial risk of harm to his health.  *Hunt v. Uphoff*, 199 F.3d at 1224.  To make out a claim for

deliberate indifference under the Eighth Amendment, Plaintiff must show "more than ordinary

---

[6]Factors that may be indicative of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," as well as the "potential for harm if medical care is delayed or denied."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373, n. 8 (7th Cir. 1997) (internal quotation marks and citation omitted).

lack of due care for the prisoner's interests or safety." *See Farmer v. Brennan*, 511 U.S. at 835.

Mr. Key has alleged that Defendants Valentine, McLaughlin, McCormack and Williams were aware of and deliberately indifferent to the significant pain caused by his pre-existing medical condition and the exacerbating effects of his kitchen duties. The Second and Final Amended Complaint alleges these four defendants refused Plaintiff's requests for adequate pain medication or relief from the physical demands of kitchen duty. *See* Second and Final Amended Complaint, at ¶¶ 7, 9-10, 12-16, and 18-19. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.") (citations omitted). Plaintiff has at least minimally alleged that Defendants Valentine, McLaughlin, McCormack, and Williams were deliberately indifferent to a serious medical condition. Those allegations are sufficient, at this stage of the litigation, to state a claim for violation of the Eighth Amendment as against those four defendants. For purposes of the qualified immunity defense as raised in Defendants' motions to dismiss, I also find that the Eighth Amendment duty to provide adequate medical care was well-established in Supreme Court and Tenth Circuit case law as of the dates of the relevant conduct alleged in the Second and Final Amended Complaint. *See, e.g., Kikumura v. Osagie*, 461 F.3d at 1291. The merits of Plaintiff's Eighth Amendment claim against Defendants McLaughlin, Valentine, Williams and McCormack should be resolved through summary judgment or trial.

The Eighth Amendment claim, however, stands on a very different footing as to Defendants Frantz and Holst. The only factual allegation specific to Defendants Frantz and Holst indicates that "[o]n July 10, 2008 and July 2009, [those defendants] denied ADA disability status;" *i.e.,* "the denial of a simple accommodation, adequate bedding." *See* Second and Final

Amended Complaint, at ¶¶ 25 and 26.  *But see White v. Goff*, 2011 WL 624059, at *6 (D. Kan. 2011) (holding that "the ADA does not establish a federal cause of action to challenge medical treatment provided to a prisoner").  Mr. Kay has not alleged facts in the current complaint that would suggest or even support an inference that Defendants Frantz or Holst knew Mr. Key faced a substantial risk of harm and/or disregarded that harm.  *Cf. Brown v. Harris*, 2009 WL 77464, at *10   (D. Colo. 2009) (in rejecting the plaintiff-inmate's Eighth Amendment claim, the court found "there is no evidence to suggest that [the defendants] had any facts before them from which to draw an inference that denial of a lower bunk restriction would create a substantial risk of serious harm to the plaintiff").  In short, the cursory assertions directed toward Defendants Frantz and Holst will not suffice to state a claim under the Eighth Amendment.  Because I conclude that Mr. Key has not alleged an Eighth Amendment violation as to Defendants Frantz and Holst, it is unnecessary for the court to reach the question of whether these two defendants are protected by qualified immunity as to the first claim for relief.

While this court is not recommending complete dismissal of Plaintiff's Eighth Amendment claim as to all defendants, I am also not expressing views on the ultimate merits of this claim.  The parties should understand that a correctional officer's response to an apparent risk always must be analyzed in a complete factual context, which in this case has not yet been developed.  *Cf. Pennington v. Taylor*, 343 F. Supp. 2d 508, 513 (E.D. Va. 2004).  So, for example, a correctional officer is generally entitled to rely upon the advice and course of treatment prescribed by medical personnel.  *Cf. Taylor v. Vicky*, 337 Fed. Appx. 412, at *3 (5th Cir. 2009) (plaintiff failed to allege facts sufficient to prove deliberate indifference where the defendant correctional officers knew that plaintiff's injury had been reported and assumed that

the prison medical staff would manage the inmate's care); *Wall v. Dauphin County*, 167 Fed.

Appx. 309, at \*2  (3rd Cir. 2006) ("[i]f a prisoner is under the care of medical experts, a non-

medical prison official will generally be justified in believing that the prisoner is in capable

hands"); *Heard v. Sheahan*, 148 Fed. Appx. 539, 540-41 (7th Cir. 2005) (noting that jail

administrators "are generally entitled to rely on the judgment of medical professionals because

the question of whether a particular medical treatment is warranted is a 'classic example of a

matter for medical judgment.'").

       Mr. Key also must recognize that the "negligent failure to provide adequate medical care,

even one constituting medical malpractice, does not give rise to a constitutional violation." *Self*

*v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).  An Eighth Amendment claim is not asserted "if a

prisoner's complaint is directed at the wisdom or quality of the medical care he received in

prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v.*

*Gaffney*, 554 F. Supp. 388, 389 (E.D. Pa. 1983).  *See also Ledoux v. Davies*, 961 F.2d 1536,

1537 (10th Cir. 1992) (simple negligence or inadvertent failure to provide adequate medical care

does not constitute the unnecessary and wanton infliction of pain).  Moreover, a "prisoner's right

is to medical care, not to the type or scope of medical care which he personally desires."

*Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) (internal quotation

marks and citation omitted).  The Constitution does not guarantee a prisoner the treatment of his

choice.  *Ledoux v. Davis,* 961 F.2d at 1537 (citations omitted).

D.     *Plaintiff's Conspiracy Claim*

       The Second and Final Amended Complaint appears to allege several discrete

conspiracies spanning the period from January to July 2008 and July 2009.  Mr. Key contends

that "Defendants McCormack, McLaughlin, Williams and others combined in a course of action that forced Plaintiff to perform painful, slavish labor from January to June 2008." The current Complaint further alleges that Defendants McLaughlin, Holst and Frantz on May 21, 2008, June 10, 2008 and in July 2009 "combined in a course of action to deny reasonable ADA accommodation." Plaintiff also alleges that Defendant Valentine "and other unknown staff" on January 17, 2008 "combined in a course of action that deprived Plaintiff of emergent medical care and caused him to linger in excruciating pain & anguish." Given the pleading deficiencies in these conspiracy allegations, Plaintiff's second claim for relief must be dismissed.

To the extent that Mr. Key is attempting to assert claims against Defendants for conspiring to violate his constitutional rights, he must allege facts showing "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another; and an overt act that results in damage." *Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) (internal quotation marks and citation omitted). "[C]onclusory allegations that defendants acted in concert, or conspired without specific factual allegations to support such assertions are insufficient." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (internal quotation marks and citation omitted). *Cf. Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (conclusory statements are insufficient to allege a claim of conspiracy); *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (holding that to survive a motion to dismiss, a complaint alleging a conspiracy to deprive a person of constitutional rights must contain more than conclusory, vague or general allegations of conspiracy.

Here, Plaintiff's conspiracy allegations fail to set forth specific facts that would establish

16

the existence of an agreement or meeting of the minds by the purported conspirators. Mr. Key alleges in conclusory terms that Defendants McCormick, McLaughlin and Williams "combined in a course of action" to force Plaintiff to continue working in the kitchen. On closer examination, the Second and Final Amended Complaint alleges that on January 5, 2008, Defendant McLaughlin declined Plaintiff's request to be excused from kitchen duty. See Second and Final Amended Complaint, at ¶ 10. Defendant McCormack, between January 2008 and June 2008, "refused to use her supervisory authority to relieve plaintiff of kitchen punishment." *Id.* at ¶ 14. Defendant Williams, the kitchen supervisor, allegedly "showed defiant indifference to plaintiff's obvious medical issues the entire time plaintiff worked in his kitchen." *Id.* at ¶ 18. At best, these allegations suggest that Defendants McLaughlin, McCormack and Williams were equally unsympathetic to Plaintiff's requests to be excused from kitchen duty. Plaintiff cannot sustain a conspiracy claim simply by alleging that individual defendants exhibited a common attitude or engaged in parallel conduct. *See also Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (noting that "parallel but independent action by actors does not import conspiracy").

More to the point, in the absence of well-pled facts showing an agreement between these three defendants, the Plaintiff's conspiracy claim appears to be built on nothing more than speculation or assumption. *Cf. Kirby v. Dallas County Adult Probation Department*, 2009 WL 5064789, at *6 (10th Cir. 2009) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)) (to state a valid conspiracy claim, "a plaintiff is required to 'allege specific facts showing agreement and concerted action'"); *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (holding that a conspiracy claim under § 1983 requires the allegation of "specific facts

showing an agreement and concerted action among the defendants"); *Durre v. Dempsey*, 869

F.2d 543, 545 (10th Cir. 1989) (holding that the district court properly dismissed plaintiff's

conspiracy claim with prejudice where the plaintiff inmate failed to allege specific facts showing

agreement and concerted action among the defendants; "conclusory allegations of conspiracy are

insufficient to state a valid § 1983 claim"); *Powell Products, Inc. v. Marks*, 948 F. Supp. 1469,

1480 (D. Colo. 1996) (holding that a "plaintiff cannot succeed on its claims for civil conspiracy

without showing that each defendant agreed to do something in furtherance of the conspiracy,

knowing of its improper purpose").

　　　Plaintiff's attempt to plead a conspiracy between Defendants McLaughlin, Holst and

Frantz is equally deficient.  According to Mr. Key, Defendant Mclaughlin screened him for ADA

disability status on May 21, 2008, and concluded that "you look OK to me."  *See* Second and

Final Amended Complaint, at ¶¶ 22-23.  Plaintiff also alleges that on June 10, 2008 and July

2009, Defendants Frantz and Holst "denied ADA disability status."  *Id.* at ¶ 25.  The fact that

each defendant rebuffed Plaintiff's request does not establish a meeting of the minds or an

agreement.  *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557 ("An allegation of parallel

conduct is thus much like a naked assertion of a conspiracy . . . it gets the complaint close to

stating a claim, but without some further factual enhancement it stops short of the line between

possibility and plausibility of 'entitle[ment] to relief'").  *See also Gee v. Pacheco*, 627 F.3d

1178, 1183 (10th Cir. 2010) (acknowledging that an allegation of parallel conduct absent context

implying a meeting of the minds is not sufficient to defeat a motion to dismiss for failure to state

a claim for relief); *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999)

(conspirators must act with a single plan, the general nature and scope of which is known to each

would-be conspirator); *Alfaro v. E.F. Hutton & Co.*, 606 F. Supp. 1100, 1117-18 (E.D. Pa. 1985) (holding that a general conspiracy allegation without a statement of facts is insufficient to state a cause of action).

Perhaps the conspiracy allegation against Defendant Valentine best illustrates the shortcomings in the second claim for relief.  In his first claim for relief, Mr. Key contends that Defendant Valentine "refused to make any further attempt to get medical attention for plaintiff; she hurried off, leaving plaintiff to linger in excruciating pain."  *See* Second and Final Amended Complaint, at ¶ 7.  Far from providing facts that would establish an agreement between two or more individuals and concerted action to further that agreement, the operative pleading portrays Defendant Valentine as acting independently.  Mr. Key cannot pursue a conspiracy claim against Defendant Valentine based solely on assumption or unfounded speculation.  I conclude the second claim for relief should be dismissed as to all defendants.

E.      *Discrimination Claim*

Although the first claim in the Second and Final Amended Complaint alleges an  Eighth Amendment violation for "deliberate indifference to medical needs," Mr. Key also suggests that Defendants Frantz and Holst deprived him of "reasonable ADA accommodation" in violation of 42 U.S.C. §§ 12101 and 12133.  *See* Second and Final Amended Complaint, at ¶¶ 31 and 32.  Although this theory of liability is not specifically addressed in Defendants' motions to dismiss, I find that any putative claim under the ADA should be dismissed.

The Americans with Disabilities Act provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, . . . be subject to discrimination by [a public entity]."  *See* 42 U.S.C. § 12132.  *See also Pennsylvania Department of Corrections v.*

*Yeskey*, 524 U.S. 206, 209 (1998) (holding that the phrase "public entity" includes state prisons and prisoners).  To establish a claim under the ADA, a plaintiff must show that (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in or otherwise discriminated against with regard to a public entity's services, programs or activities; and (3) that such exclusion or discrimination was by reason of his disability.  *See, e.g.*, *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

"[T]he failure to provide medical treatment to a disabled prisoner, while raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."  *Rashad v. Doughty*, 4 Fed. Appx. 558, 560 (10th Cir. 2001) (citing *Bryant v. Madigan* 84 F.3d 246, 249 (7th Cir. 1996).  *Cf. Watson v. Polland*, 2009 WL 1328316, at *4 (D. Colo. 2009); *Boles v. Dansdill*, 2007 WL 2770473, at *18 (D. Colo. 2007).  In this case, the premise underlying Mr. Key's ADA claim is unclear.  Plaintiff alleged he was "screened by defendant McLaughlin for ADA disability status; and plaintiff told him about the months of pain and misery of kitchen slavery and his resolution to refuse to work in the kitchen."  *See* Second and Final Amended Complaint, at ¶ 22.  Defendant McLaughlin reportedly concluded that Mr. Key did not qualify for disability status.  *Id.* at ¶ 23.  These paragraphs, without more, are insufficient to state an ADA claim against Defendant McLaughlin.  The Tenth Circuit addressed similar circumstances in  *Jones v. Smith*, 109 Fed. Appx. 304, 309 (10th Cir. 2004), where the inmate plaintiff alleged that the defendants had given him a work assignment to food services that he was physically unable to perform.  The Tenth Circuit held that the plaintiff failed to state a claim under the ADA because he did not claim that his assignment to medically inappropriate work was done *because of his disability.  Id.* (noting that the challenged assignment "could have been the result of

20

incompetence or personal spite or any other number of reasons, according to Plaintiff's complaint"). *Cf. Bryant v. Madigan*, 84 F.3d at 249 (suggesting that the ADA could not be used to do "an end run" around those decisions that have refused to transform the Eighth Amendment into a medical malpractice statute).

Mr. Key also appears to base an ADA claim on Defendants Frantz and Holst's "denial of a simple accommodation, adequate bedding." *See* Second and Final Amended Complaint, at ¶¶ 25-26, and 31.[7]  Indeed, this seems to be the only allegedly improper conduct attributed to Defendants Frantz and Holst.  The Second and Final Amended Complaint does not contain any factual allegations that would demonstrate Defendants Frantz and Holst denied Mr. Key an opportunity to participate in any services, programs or activities because of his alleged disability. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (a plaintiff may not rely on mere labels or conclusions to satisfy the pleading requirements of Fed. R. Civ. P. 8, "and a formulaic recitation of the elements of a cause of action will not do").  In the absent of such allegations, Plaintiff has failed to state a claim for relief under the ADA.  *Cf. Hodge v. Sidorowicz*, 2011 WL 1226280, at *8 (S.D.N.Y. 2011) (holding that the plaintiff inmate had failed to state a claim for relief under the ADA based upon defendants' failure to provide a second mattress to accommodate the plaintiff's back pain).

F.      *Statute of Limitations Defense*

Defendant Valentine has moved to dismiss the claims against her based on the applicable statute of limitations.  Defendant Valentine is mentioned in only four paragraphs of the Second

---

[7]Paragraph 25 of the Second and Final Amended Complaint refers to "Exhibits 20 & 21." Neither of these exhibits are attached to the current pleading or the original Complaint.

and Final Amended Complaint.  Plaintiff alleges that on January 17, 2008, he was suffering such "unbearable pain' that he declared "a 'medical emergency'" with the expectation he would have been taken immediately to the medical department for treatment.  According to Mr. Key, when he reported his need for urgent treatment on January 17, 2008, Defendant Valentine said the nurse "won't see him 'just for back pain" and then refused to make any further attempts to obtain medical attention for Plaintiff.  Mr. Key claims that Defendant Valentine "hurried off, leaving Plaintiff to linger in excruciating pain."  *See* Second and Final Amended Complaint, at ¶¶ 6-7.  In subsequent paragraphs, Plaintiff alleges that Defendant Valentine "violated Plaintiff's Eighth Amendment right . . . by depriving Plaintiff reasonable access to urgent medical attention when Plaintiff declared a medical emergency" on January 17, 2008,  *id.* at ¶ 30, and that Defendant Valentine and other unknown staff combined to deprive Mr. Key of emergent medical care on January 17, 2000.  *Id.* at ¶ 35.  Relying on Plaintiff's own chronology of events, Defendant Valentine contends that the claims against her in Plaintiff's original Complaint, filed on January 19, 2010 should be dismissed as untimely.

Federal courts look to the applicable state statute of limitations to determine the timeliness of a claim under § 1983.  *See Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993).  Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983.  *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided");  *Blake v. Dickason*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

The determination of when a § 1983 action accrues is controlled by federal rather than state

law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted).  "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action." *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994).  "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993).  Thus, under Colorado's applicable two-year statute of limitations provision, Mr. Key's claims against Defendant Valentine accrued on January 17, 2008.  In the absence of some justification for equitable tolling, Plaintiff was required to bring the claims against Defendant Valentine on or before January 17, 2010.

Although statutes of limitation "have long been respected as fundamental to a well-ordered judicial system," *Board of Regents of University of State of New York v. Tomanio*, 446 U.S. 478, 487 (1980), motions to dismiss on statute of limitations grounds generally are not favored.  *See, e.g., FDIC v. Frates*, 44 F. Supp. 2d 1176, 1203 (N.D. Okla. 1999).  *Cf. Tolbert v. National Harmony Memorial Park*, 520 F. Supp. 2d 209, 211 (D.D.C. 2007) ("[B]ecause statute of limitations issues often depend upon contested questions of fact, 'courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint'").

The available record does not conclusively establish that Mr. Key failed to meet the January 17, 2010 deadline.  Court records indicate that the original Complaint was received by the District Court for the District of Colorado on January 11, 2010, along with a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915.  If the court credits the

Certificate of Mailing attached to the original Complaint, Plaintiff placed this pleading "in the United States Mail" on December 28, 2009. I further note that Mr. Key's Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 also is dated December 28, 2009. Magistrate Judge Boland signed an Order on January 14, 2010 directing "that the clerk of the court commence this civil action." *See* Order Directing Clerk to Commence Civil Action and Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. § 1915 (doc. #2).

In *Houston v. Lack*, 487 U.S. 266, 271 (1988), the United States Supreme Court held that a prisoner's notice of appeal was filed with the court when the prisoner gave it to prison authorities for mailing. This "mailbox rule" has been extended to a *pro se* complaint alleging a § 1983 action against state prison officials. *See, e.g., Cooper v. Brookshire*, 70 F.3d 377, 380 (5th Cir. 1995) and cases cited therein. *Compare United States v. Leonard,* 937 F.2d 494, 495 (10th Cir. 1991) (declining to apply the "mailbox rule" where the pleading was placed in the regular prison mail system rather than the prison legal mail system); *Swoboda v. Dubach*, 992 F.2d 286, 288-89 (10th Cir. 1993) (the exception to the "mailbox rule" does not apply where the prison has only one mail system). Given the present state of the record, and without further information regarding the prison mail system utilized by Plaintiff in filing his original Complaint, the court cannot conclude that Mr. Key is unable to present facts sufficient to withstand Defendant Valentine's statute of limitations defense. Accordingly, the court cannot recommend Defendant Valentine's dismissal from this action based upon that defense.

## CONCLUSION

Accordingly, for the foregoing reasons, this court RECOMMENDS that Defendants Williams, Frantz, Holst, Valentine and McCormack's Motion to Dismiss Second Amended

Prisoner Complaint (doc. #35) and Defendant McLaughlin's Motion to Dismiss Second

Amended Prisoner Complaint (doc. #53) be GRANTED IN PART and DENIED IN PART.

More specifically, I recommend that Plaintiff Key's claims against Defendants in their official

capacity be dismissed with prejudice as the legal deficiencies in those claims cannot be cured

through amendment.  *Cf. Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001).  I further

recommend that the conspiracy claim (Claim Two) as to all defendants be dismissed without

prejudice, and that the Eighth Amendment claim (Claim One) be dismissed without prejudice as

to Defendants Frantz and Holst.  I also recommend that any claim under the Americans with

Disabilities Act be dismissed without prejudice as all Defendants.  In all other respects, I

recommend that the pending motions to dismiss be denied and that this civil action proceed on

Claim One against Defendants McLaughlin, Williams, Valentine, and McCormack.


**Advisement to the Parties**

Within fourteen days after service of a copy of a Magistrate Judge's order, a party may

serve and file written objections to the order.  Fed. R. Civ. P. 72(a).  "A judge of the court may

reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is

clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  *See also* Fed. R. Civ. P. 72(a)

("The district judge in the case must consider timely objections and modify or set aside any part

of the order that is clearly erroneous or is contrary to law.").  Failure to make timely objections

to the Magistrate Judge's order(s) may bar review by the District Judge and will result in a

waiver of the right to appeal.  *See Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008)

("We have adopted a firm waiver rule when a party fails to object to the findings and

recommendations of the magistrate.  The failure to timely object to a magistrate's recommendations waives appellate review of both factual and legal questions.") (quotations, citation, and brackets omitted);  *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)").

DATED this 3rd day of August, 2011.

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge