IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00103-WJM-CBS

DAVID SCOTT KEY,
        Plaintiff,
v.

SCOTT McLAUGHLIN,
JOE WILLIAMS,
SANDY VALENTINE, and
CAROL McCORMACK,
        Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Shaffer

This civil action comes before the court on Defendants' Motion for Summary Judgment. Pursuant to the Order Referring Case dated August 4, 2010 (Doc. # 21) and the memorandum dated September 21, 2012 (Doc. # 95), this matter was referred to the Magistrate Judge.  The court has reviewed the Motion, Mr. Key's Response (filed December 20, 2012) (Doc. # 104), Defendants' Reply (filed January 11, 2013) (Doc. # 108), the exhibits and affidavits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Mr. Key initiated this civil action in his *pro se* capacity on January 11, 2010, raising claims under 42 U. S. C. § 1983 and the Eighth Amendment to the U.S. Constitution for "Unconstitutional Conditions of Confinement" and "Deliberate Indifference to Medical Needs" against twelve named Defendants and several unidentified Defendants.  (*See* Prisoner Complaint (Doc. # 3)).  The initial Prisoner Complaint comprised 37 pages, 241 numbered paragraphs, and 19 attached exhibits.  (*See id.*).  Mr. Key's claims arose from events that

occurred while he was incarcerated at the Buena Vista Correctional Facility ("BVCF") of the Colorado Department of Corrections ("CDOC").[1]  On March 10, 2010, the court directed Mr. Key to file an amended complaint.  (*See* Order (Doc. # 7)).  On March 11, 2010, the court received Mr. Key's "First Amended Complaint."  (*See* Doc. # 8).  On March 31, 2010, the court permitted Mr. Key an extension of time to file another amended pleading that complied with the court's March 10, 2010 Order.  (*See* Minute Order (Doc. # 11)).  On May 3, 2010, Mr. Key filed his Amended Prisoner Complaint, which comprised 29 pages and 116 numbered paragraphs, named 26 Defendants and added two claims.  (*See* Doc. # 12).

On June 22, 2010, the court ordered Mr. Key to file a Second and Final Amended Complaint.  (*See* Order (Doc. # 17)).  Mr. Key filed his "Second and Final Amended Prisoner Complaint" ("SAC") on July 23, 2010, alleging two claims for relief under § 1983 against six Defendants in their individual and official capacities for violation of the Eighth Amendment and conspiracy.  (*See* Doc. # 18).  Claim One alleges the Defendants were deliberately indifferent to Mr. Key's medical needs associated with a preexisting injury to his pelvis that he sustained prior to his arrival at BVCF in August 2007.  Mr. Key contends that commencing in December 2007, he made repeated, unsuccessful "requests for medical attention for serious pain and/or requests for treatment of anxiety and anger;" that when he was finally seen by Defendant McLaughlin, he received a "grossly inadequate anti-flammatory [sic] for extreme, chronic pain [that] amounted to no relief at all;" that Defendants McLaughlin and McCormack refused to excuse him from working in the prison kitchen; that Defendant Williams refused to accommodate his physical limitations; and that Defendants Frantz and Holst denied him disability status under the ADA. (*See* Doc. # 18 at 5-9 of 15).  Claim Two alleges that Defendants conspired to deny Mr. Key "Federally Protected Civil Rights."  (*See id.* at 10 of 15).  Among other things, Mr. Key seeks

---

[1]      Mr. Key was paroled on September 30, 2010 and currently resides in California. (*See* Docs. # 31, # 42, # 84, # 94-3 at 52 of 62; # 97).

compensatory, nominal, and punitive damages, costs and fees, and unspecified injunctive relief. (*See* Doc. # 18 at 12 of 15).

On August 3, 2011, the Magistrate Judge recommended that Defendants' Motion to Dismiss be granted in part and denied in part, that Defendants Frantz and Holst be dismissed, and that this civil action proceed only on Mr. Key's Eighth Amendment Claim against Defendants McLaughlin, Williams, Valentine and McCormack in their individual capacities. (*See* "Recommendation on Pending Motions to Dismiss" (Doc. # 65)). On September 16, 2011, District Judge Martinez approved the Magistrate Judge's Recommendation. (*See* "Order Affirming August 3, 2011 Recommendation and Granting Defendants' Motion to Dismiss" (Doc. # 67)). After discovery closed, Defendants McLaughlin, Williams, Valentine and McCormack filed their Motion for Summary Judgment on September 21, 2012.

II.     Standard of Review

Defendants move pursuant to Fed. R. Civ. P. 56 for summary judgment on the single claim remaining in the SAC on the basis that they are entitled to qualified immunity in their individual capacities. "[Q]ualified immunity is an affirmative defense to a section 1983 action . . . ." *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012) (internal quotation marks and citations omitted). Qualified immunity protects defendants not only from liability, but also from suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Such immunity is qualified in that it does not obtain when otherwise immune officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998)

(quoting *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)).  Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"When the defense of qualified immunity is raised in a summary judgment motion, we apply special rules to determine whether the motion was properly granted or denied."  *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citation omitted).  *See also Thomson*, 584 F.3d at 1312 (court's review of summary judgment "in the qualified immunity context differs from that applicable to review of other summary judgment decisions.").  "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff," who must meet a two-part test before the defendant will bear the traditional burden of a movant for summary judgment under Fed. R. Civ. P. 56(c).  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted).

> Specifically, [t]he plaintiff initially bears a heavy two-part burden [and] must show (1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue. Unless the plaintiff carries its twofold burden, the defendant prevails.

*Reynolds*, 370 F.3d at 1030 (internal quotation marks and citations omitted).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).  *See also Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) ("Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry) (internal quotation marks and citation omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Id.*, at n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the SAC has been sworn to under penalty of perjury (*see* Doc. # 18 at 12 of 15), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

III.  Analysis

Title 42 U.S.C. § 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any

substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal quotation marks and citations omitted). An Eighth Amendment violation may lie where the inmate complains of treatment that is merely delayed, rather than refused. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (D. Colo. 2000) (*overruled on other grounds, Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)).  To the extent a correctional officer is serving as a "gatekeeper" for medical personnel capable of treating an inmate's condition, he or she may be liable under the Eighth Amendment to the extent that they delayed or refused to fulfill that gatekeeper role. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock*, 218 F.3d at 1211 (Eighth Amendment may be violated if the professional "knows that his [or her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he [or she] delays or refuses to fulfill that . . . role due to deliberate indifference.")).

A claim for deliberate indifference to serious medical needs has both an objective and a

subjective component.  *Hunt*, 199 F.3d at 1224.  As to the first component, a medical need is "serious" when it has been diagnosed by a physician as requiring treatment or where the condition is so obvious that even a layperson would recognize the need for a doctor's attention. *Sealock*, 218 F.3d at 1209.  With regard to the second component, "deliberate indifference" requires a state of mind "more blameworthy than negligent," but this can be "something less than acts or omissions for the very purposes of causing harm or with knowledge that harm will result."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  To establish a claim for deliberate indifference under the Eighth Amendment, "more than ordinary lack of due care for the prisoner's interests or safety" must be shown.  *Id.*  "To make out an Eighth Amendment claim based on the failure to provide adequate medical care, . . . the mere negligent or inadvertent failure to provide adequate care is not enough."  *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198 n. 5 (1989).  *See also Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) ("A prison doctor's negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment") (internal quotation marks and citation omitted).  For a prison official to be found liable for deliberate indifference, "the official 'must know[] of and disregard [] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference."  *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).  An Eighth Amendment violation arises only where a defendant subjectively knows of an excessive risk to the plaintiff's safety, but nevertheless disregards that risk.  *Sealock*, 218 F.3d at 1209.  Mr. Key must present evidence sufficient to support an inference that Defendants knew about and disregarded a substantial risk of harm to his health.  *Hunt*, 199 F.3d at 1224.

Mr. Key alleges that he required medical treatment for "chronic pain" and "pre-existing injuries from a plane crash and motorcycle wreck" that occurred prior to his incarceration in the

CDOC.  (*See* SAC at 5 of 15, ¶ 1).  He alleges that he experienced "pain from injuries to the lower back, right hip, broken pelvis with pins and plate." (*See id.* at ¶ 2).  Mr. Key alleges that Defendants McLaughlin, Williams, Valentine, and McCormack were aware of and deliberately indifferent to the significant pain caused by his pre-existing medical condition and the exacerbating effects of his kitchen duties.  Defendants argue that Mr. Key fails to establish their deliberate indifference to his serious medical needs.

A.    Defendant Valentine

Mr. Key alleges that "Defendant Valentine violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by depriving Plaintiff reasonable access to urgent medical attention when Plaintiff declared a medical emergency." (*See id.* at ¶ 30).  In January of 2008, Defendant Valentine was employed as a Correctional Officer I, Unit Officer at the BVCF. (*See* Affidavit of Sandy Valentine, Exhibit A-1 to Defendants' Motion (Doc. # 94-1) at ¶ 4). Defendant Valentine was on duty in the BVCF east unit on January 17, 2008, the date that  Mr. Key alleges he declared a "medical emergency" with the expectation that he would immediately be taken to the medical department for treatment.  (*See* Doc. # 18 at 5 of 15, ¶¶ 5-6).  He "reported the need for urgent treatment" to Defendant Valentine and she contacted the medical department concerning his condition.  (*See id.*).  Defendant "Valentine told plaintiff that the nurse won't see him 'just for back pain' and then refused to make any further attempt to get medical attention for plaintiff; she hurried off, leaving plaintiff to linger in excruciating pain." (*See id.* at 6 of 15, ¶ 7).

The court assumes without specifically deciding that Mr. Key's back pain could be recognized as a serious medical need.  *See Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (quoting *Sealock*, 218 F.3d at 1210 (Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain suffered during the delay is

substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test.") (*overruled on other grounds, Robbins*, 519 F.3d at 1242).   However, even assuming that Mr. Key's complaints of back pain qualify as "sufficiently serious," his allegations and evidence do not demonstrate deliberate indifference by Defendant Valentine.

Defendant Valentine did not prevent Mr. Key from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment.   Mr. Key's own pleading states that Defendant Valentine promptly relayed his request for immediate medical attention to the prison's medical unit on January 17, 2008.  (*See* Doc. # 18 at  6 of 15, ¶ 7; *see also* Response (Doc. # 104) at 2 of 7 ("She went into the east unit to avoid the noise of the cellhouse to make the call to the nurse; she exited the office less than a minute later, saying that the nurse refused to see me 'just for back pain.'")).  Mr. Key alleges that a nurse in the medical department determined that he did not require immediate medical attention.  (*See id.* at ¶ 7).  A correctional officer is generally entitled to rely upon the advice and course of treatment prescribed by medical personnel.  *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) (observing that a "prison official may rely on a medical professional's opinion if such reliance is reasonable"); *Hayes v. Snyder*, 546 F.3d 516, 526–27 (7th Cir. 2008) (non-medical prison officials entitled to defer to the professional judgment of facility's medical officials on questions of prisoner's medical care); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference"); *Anglin v. City of Aspen, Colo.*, 552 F. Supp. 2d 1205, 1225 n. 4 (D. Colo. 2008) ("As a non-medical professional, a reasonable law enforcement officer cannot be expected to question the judgment of qualified medical professional absent some extraordinary circumstances, the nature of which the court cannot even conjecture at this point."); *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002)

("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993) (defendants who were not medical personnel could not be considered deliberately indifferent for failing to respond to medical complaints of prisoner who was being treated by prison doctor)); *Williams v. Cearlock*, 993 F. Supp. 1192, 1197 (C.D. Ill. 1998) ("[P]rison administrators, having no medical expertise, must rely on health care professionals to assess the needs of prisoners and initiate treatment.").

Mr. Key does not demonstrate that he manifested any obvious physical condition that could have been interpreted by a layperson as requiring immediate medical attention.  Nor does he establish that Defendant Valentine unreasonably relied on the nurse's medical judgment in determining that immediate medical care was unnecessary.  *See Shanton v. Detrick*, 826 F. Supp. 979, 982 (N.D. W.Va. 1993) (correctional officers who relied on the professional judgment of attending physician, medical unit, and security staff were not deliberately indifferent);  *Taylor v. Vicky*, No. 07-60045, 337 F. App'x 412, 415 (5th Cir. 2009) (plaintiff failed to allege facts sufficient to prove deliberate indifference where the defendant correctional officers knew that plaintiff's injury had been reported and assumed that the prison medical staff would manage the inmate's care); *Wall v. Dauphin County*, No. 04-4112, 167 F. App'x 309, 312-13 (3d Cir. 2006) ("[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands;" plaintiff "presented no evidence that prison officials knew – or should have known – that [a prison nurse's] response was inappropriate or inadequate) (internal quotation marks and citation omitted);  *Al-Turki v. Ballard*, No. 10-cv-02404-WJM-CBS, 2013 WL 589174, at * 14 (D. Colo. Feb. 14, 2013) ("regarding a prison official's deference to a medical professional's decision not to assess a prisoner, the Court must defer to Tenth Circuit precedent establishing the more general proposition that

reliance upon the judgment of a medical professional is permissible").[2]   Mr. Key makes a

conclusory argument that "[o]bviously, the nurse's refusal to see me was due to Valentine's half-

hearted attempt to describe my condition."  (*See* Doc. # 104 at 2 of 7).  This purely speculative

argument does not create a material fact in dispute.  "Only disputes over material facts can

create a genuine issue for trial and preclude summary judgment."  *Faustin v. City & County of*

*Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  In sum, Mr. Key does not demonstrate that

Defendant Valentine was deliberately indifferent to his medical needs on January 17, 2008.

Defendant Valentine is thus entitled to qualified immunity as to the single remaining claim in the

SAC.


B.   Defendant Williams

   Mr. Key alleges that Defendant Williams was deliberately indifferent to his serious

medical needs by refusing to release him from his work assignment in the kitchen despite his

medical restriction.  (*See* Doc. # 18 at 7, 9 of 15, ¶¶ 17-20, 23).  From January to May of 2008,

Defendant Williams was employed as a Correctional Support Trade Supervisor II at the BVCF.

(*See* Affidavit of Joe Williams, Exhibit A-2 to Defendants' Motion (Doc. # 94-2) at 1 of 19, ¶¶ 2-

3).  Mr. Key was assigned to work in the food services department on January 5, 2008.  (*See id.*

at 2 of 19, ¶ 5; 7 of 19).  The decision to assign Mr. Key to the food services department was

made by the BVCF job classification board.  (*See id.* at 2 of 19, ¶ 5).  Mr. Key began working in

the kitchen on or about January 16, 2008.  (*See* Doc. # 18 at 6 of 19).  At that time, Mr. Key did

not have any medical restrictions concerning his ability to work in the kitchen.  (*See* Doc. # 94-2

at 2 of 19, ¶ 6).

   Mr. Key worked 18 days in the kitchen during January 2008, 17 days during February

---

[2]      Copies of unpublished cases cited are attached to this Recommendation.

2008, and 7 days during March 2008.  (*See* Doc. # 94-2 at 2-3 of 19, ¶¶ 6-9;  8, 10, 13 of 19; *see also* Affidavit of Carol McCormack, Exhibit A-3 to Defendants' Motion (Doc. # 94-3) at ¶ 15). He received job performance ratings of "good" and "acceptable" for the months of January, February, and March 2008.  (*See id.*; *see also* 9-15 of 19).  Mr. Key did not have any medical work restrictions during January, February, or March 2008.  (*See* Doc. # 94-2 at 2 of 19, ¶ 7). On April 2, 2008 Mr. Key was issued one medical work restriction that limited the period of time for which he could stand.  (*See id.* at 4 of 19, ¶ 15;  18 of 19).  It did not require that he be relieved from kitchen work.  (*See id.*).  Mr. Key notified Defendant Williams of his medical restriction on April 6, 2008.  (*See* Doc. # 18 at 7 of 15).  Mr. Key worked 5 days in the kitchen during April 2008 and received a job performance rating of "very poor" and "disruptive" for the month of April 2008.  (*See id.* at 3 of 19, ¶ 10;  16-17 of 19; Doc. # 94-3 at ¶ 19).  Mr. Key was terminated from his job in the food services department on May 5, 2008 for failure to report to work the previous week.  (*See id.* at 5 of 19, ¶ 20;  19 of 19).  Defendant Williams did not participate in the decision to terminate Mr. Key from his kitchen job.  (*See id.*).

An inmate's allegations that prison officials knowingly forced him to perform medically inappropriate work may implicate the Eighth Amendment.  *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (inmate had basis for a deliberate indifference claim where prison official purportedly knew about a four hour medical work restriction but still forced the inmate to work long hours);  *Williams v. Director, Arkansas Dep't of Corrections*, 148 F.3d 983, 987 (8th Cir. 1998) (prison officials violate the Eighth Amendment when they knowingly compel an inmate "to perform labor that is beyond an inmate's strength, dangerous to his life or health, or unduly painful") (internal citations omitted);  *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) (recognizing that prison official's decision to place inmate on work detail knowing that work will significantly aggravate inmate's serious physical ailment would constitute deliberate indifference to serious medical needs);  *Jones v. Smith*, No. 04-6116, 109 F. App'x 304, 309,

2004 WL 2053280, at *4 (10th Cir. Sept. 13, 2004) (inmate "may have been able to state a claim under the Eighth Amendment for the prison forcing him to do medically inappropriate work"). However, a mere disagreement about a work assignment does not amount to deliberate indifference.  *See Freeman v. Alford*, 48 F.3d 530 (5th Cir. 1995) (inmate's work assignments generally comported with the physical limitations that had been determined at the time")*; Douglas v. McCasland*, 194 F. App'x 192 (5th Cir. 2006) (although he had a history of cardiac and kidney problems, inmate "failed to show that defendants knowingly assigned him to sedentary work knowing that the classification would significantly aggravate his condition").

Mr. Key worked in the kitchen without medical restrictions from January 2008 until April 2008.  Because he was not under any medical restrictions in January 2008, his argument that "[i]n January 2008, Lt[.] Williams told me to carry a large stack of heavy pans across the kitchen" does not support his allegation of deliberate indifference.  (*See* Doc. # 104 at 2 of 7, ¶ 15).  Mr. Key's own allegations indicate that Defendant Williams allowed him to "get a cart and stack [the trays] on top" rather than carry them.  (*See* Doc. # 104 at 2 of 7).  Mr. Key continued to work in the kitchen under a medical restriction from April 6, 2008 to May 5, 2008.  The medical restriction noted a work restriction "for no standing over 59 minutes" and "[i]f possible, please allow Mr. Key to work a job where he is not constantly on his feet," but it did not require that he be relieved from kitchen work.  (*See* Doc. # 94-2 at 4 of 19, ¶ 15; 18-19 of 19).  Many inmates who had sitting and standing medical restrictions worked in the food services department with accommodations.  (*See* Doc. # 94-2 at 4-5 of 19, ¶¶13-19).  There were numerous jobs duties in the kitchen that could be assigned to meet Mr. Key's standing restriction, such as rolling flatware, wiping down tables, filling salt and pepper shakers, placing napkins in cups, and working the serving line while sitting down.  (*See id.* at ¶¶ 12-19).

Mr. Key presents no specific evidence of any job duties he had to perform in the food services department that were beyond his medical work restrictions.  Mr. Key's argument that "to my

knowledge, [Defendant Williams] did nothing to instruct his staff in accommodating me" is conclusory, speculative, and does not does not create a material fact in dispute. (*See* Doc. # 104 at 3 of 7, ¶ 19).  The allegations and evidence show only that Defendant Williams continued Mr. Key's work assignments in the kitchen because there were no documented medical restrictions precluding those work assignments. (*See* Doc. # 94-2 at 4-5 of 19, ¶¶ 13-19). Because Mr. Key does not meet his burden of proving that Defendant Williams  knowingly disregarded his serious medical needs, Defendant Williams is entitled to qualified immunity from the single remaining claim in the SAC.

C.     Defendant McCormack

Mr. Key alleges that Defendant McCormack was deliberately indifferent to his serious medical needs because she refused to use her supervisory authority to relieve him of his work assignment in the kitchen. (*See* Doc. # 18 at 6-7, 9 of 15, ¶¶ 12-16, 28).  Defendant McCormack was employed as a Case Manager I at the BVCF. (*See* Doc. # 94-3 at ¶ 2).  Mr. Key was assigned to Defendant McCormack's caseload on September 11, 2007. (*See id.* at ¶ 7).  Mr. Key requested, Defendant McCormack recommended, and the Job Classification Board ("Board") granted a work assignment to the graphic arts vocational program. (*See id.*; *see also* Doc. # 94-3 at 27 of 62).  However, on December 3, 2007, Mr. Key was convicted of a disciplinary violation for possession of dangerous contraband, including a 13-inch piece of steel cut from a locker box, and damage to property. (*See* Doc. # 94-3 at 2-3 of 62, ¶ 8;  28-30 of 62).  As a result of this conviction, Mr. Key was no longer eligible for a work assignment in the graphic arts vocational program. (*See* Doc. # 94-3 at 3 of 62, ¶ 9).[3]

---

[3]     To be eligible for a vocational program, inmates must not have any class II disciplinary convictions within the preceding 3 months or any class I disciplinary convictions within the preceding 6 months. (*See* Doc. # 94-3 at 3 of 62, ¶ 9;  Administrative Regulation ("AR") 300-23 IV. H.).

Upon Mr. Key's return from segregation to Defendant McCormack's caseload on December 20, 2007, he told her that he was medically unable to perform any kitchen work. (*See* Doc. # 94-3 at 3 of 62, ¶ 10).  Defendant McCormack confirmed with the computer records and the medical department that Mr. Key had no medical work restrictions that would prevent him from working in the kitchen.  (*See id.* at ¶¶ 10, 11).  In the job assessment form that submitted to the Board on January 3, 2008, Defendant McCormack noted that Mr. Key was claiming medical and/or orthopedic issues.  (*See id.* at ¶ 12).  The Board inquired if Mr. Key had medical work restrictions and was informed by Defendant McCormack that he did not.  (*See id.*). The Board assigned him to work in food services.  (*See* Doc. # 94-3 at 49 of 62).  Defendant McCormack did not participate in the decision to assign Mr. Key to food services and instructed him to contact the medical department if he could not perform kitchen work.  (*See id.* at ¶¶ 13-14).

On April 2, 2008, Mr. Key submitted a medical work restriction memo to Defendant McCormack.  (*See* Doc. # 94-3 at 5 of 62, ¶ 16;  56 of 62).  While the restriction limited Mr. Key to standing no more than 59 minutes, it did not prohibit him from working in the kitchen.  (*See id.* at 56 of 62).  On April 3, 2008, Defendant McCormack submitted a Job Assessment Form to the Board, attaching the medical restriction memo and requesting an assignment to east wing Special Projects, "which is light short term janitorial work."  (*See id.* at 5 of 62, ¶ 17;  55 of 62). The Board determined that Mr. Key's restriction could be accommodated in his food services job.  (*See* Doc. # 94-3 at 5 of 62, ¶ 18).

Mr. Key was terminated from his kitchen job on May 5, 2008 for failure to report to work. (*See id.* at 5 of 62, ¶ 19;  59-60 of 62).  Rather than issuing a disciplinary violation for failure to work, Defendant McCormack left Mr. Key on unassigned status from May 5, 2008 until May 28, 2008.  (*See id.* at 6 of 62, ¶¶ 20, 25;  61 of 62).  On May 29, 2008, Defendant McCormack submitted a Job Assessment Form to the Board, recommending that Mr. Key be assigned back

to the graphic arts vocational program because six months had passed since he received his December 3, 2007 disciplinary conviction. (*See* id. at 6 of 62, ¶ 21, 62 of 62). The Board accepted her recommendation and assigned Mr. Key to the vocational program on May 29, 2008. (*See id.*).

The evidence does not demonstrate that Defendant McCormack was deliberately indifferent to Mr. Key's serious medical needs. Mr. Key's argument that Defendant McCormack could have postponed any job assignment "until I was ready" does not establish that she was deliberately indifferent to his serious medical needs. Defendant McCormack had no authority to issue medical work restrictions or countermand restrictions issued by the prison medical department. (*See* Doc. # 94-3 at 6-7 of 62, ¶¶ 22-23, 27). Nor did she have the authority to make or alter inmate work assignments. (*See id.* at ¶¶ 24, 26). Defendant McCormack could reasonably rely on the judgment of prison medical professionals regarding Mr. Key's medical restrictions. *See, e.g., Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (prison officials may rely on a medical professional's judgment unless the prisoner is obviously receiving inadequate care); *Williams*, 993 F. Supp. at 1197 ("[P]rison administrators, having no medical expertise, must rely on health care professionals to assess the needs of prisoners and initiate treatment.").

The record shows that Defendant McCormack did everything in her power to assist Mr. Key in obtaining a work assignment outside of the kitchen. She communicated his concerns to the Board and urged him to seek a medical restriction. When Mr. Key obtained a medical restriction, she immediately presented it to the Board and recommended that he be reassigned to another job. (*See* Doc. # 94-3 at 7 of 62, ¶ 24). While Defendant McCormack could have initiated disciplinary action against Mr. Key when he was terminated from his kitchen job, she instead left him on unassigned work status until he was again eligible for placement in the graphic arts vocational program, to which he was accepted. (*See id.* at 25). Based on the

record before the court, Mr. Key has not demonstrated deliberate indifference by Defendant McCormack.  She is thus entitled to qualified immunity as to the single remaining claim in the SAC.

D.    Defendant McLaughlin

Mr. Key alleges that Defendant McLaughlin was deliberately indifferent to his serious medical needs by: (1) refusing to issue a medical restriction to release him from working in the kitchen, (2) depriving him of adequate pain medication, and (3) removing his medical restrictions and discontinuing his pain medication.  (*See* Doc. # 18 at 9 of 15, ¶ 27).  During the time period relevant to Mr. Key's claim, Dr. McLaughlin was a physician at the BVCF.  (*See* Affidavit of Scott McLaughlin (Doc. # 94-4) at 1 of 21, ¶¶ 2-3).  Dr. McLaughlin first saw Mr. Key on January 4, 2008, following a complaint of hip pain submitted by Mr. Key.  (*See id.* at ¶ 6; Doc. # 18 at ¶ 8).  Mr. Key's medical records revealed that his first complaint of hip or back pain was made on December 15, 2007.  (*See id.* at 2 of 21, ¶ 5, 7-8  of 21).  On January 4, 2008, Mr. Key reported to Dr. McLaughlin that his hip pain had worsened since his placement in administrative segregation and requested a prescription for Motrin.  (*See id.* at ¶ 6).  Dr. McLaughlin's physical examination of Mr. Key revealed nothing remarkable.  (*See id.* at ¶ 7).  Mr. Key argues that Dr. McLaughlin's performed "a cursory examination at best."  (*See* Doc. # 104 at 4 of 7, ¶ 34).  Dr. McLaughlin issued him a 120-day prescription for Motrin.  (*See id.* at ¶ 8).  Mr. Key disputes the evidence that he did not mention a medical work restriction.  (*See id.* at ¶ 9; *see also* Doc. # 94-4 at 9 of 21; Doc. # 104 at 4 of 7, ¶¶ 40-45).

Mr. Key went to the medical department again on February 7, 2008, after he hit his head on the corner of a table in the kitchen while bending over to pick up his identification.  (*See* Doc. # 94-4 at 3 of 21, ¶ 10; 10 of 21).  Mr. Key did not attend a scheduled medical appointment on March 11, 2008.  (*See id.* at ¶ 11; 11 of 21).  Mr. Key was next seen in the medical department

17

on April 2, 2008 by Physician Assistant Miner for complaints of chronic pain. (*See id.* at ¶ 12; 12 of 21).  Mr. Key told P.A. Miner that Motrin helped with his pain, but that he would like more than 30 tablets a month.  (*See id.* at 12 of 21).  Mr. Key also reported that working in the kitchen and standing more than an hour or so caused him severe pain.  (*See id.*).  P.A. Miner prescribed 60 tablets of Motrin per month, until June 1, 2008 and issued a medical restriction limiting him from squatting, bending, and standing more than 59 minutes.  (*See* Doc. # 94-4 at 12-13 of 21; Doc. # 94-2 at 18 of 19; Doc. # 18 at ¶ 15).

Mr. Key was seen in the medical department on April 23, 2008 by Dr. Shepard for mental health treatment and on May 14, 2008 and May 20, 2008 for dental care.  (*See* Doc. # 94-4 at 4 of 21, ¶¶ 14-16, 14-17 of 21; Doc. # 18 at ¶ 21).  Dr. McLaughlin saw Mr. Key for the second and last time on May 21, 2008, for a mobility/disability evaluation pursuant to the *Montez Remedial Plan.*[4]   (*See id.* at 5 of 21, ¶ 17, 18-19 of 21; Doc. # 18 at ¶ 22).  Dr. McLaughlin conducted a physical examination that revealed no mobility problems.  (*See* Doc. # 94-4 at 5 of 21, ¶ 18, 18 of 21).  Mr. Key did not assert any mobility problems, but stated that he experienced pain after working a full shift in the kitchen.  (*See id.* at 5 of 21 , ¶ 17, 18 of 21).  As Mr. Key was no longer working in the kitchen, his medical restriction was removed.  (*See id.* at 5 of 21, ¶ 20, 18 of 21).  Because inmates were permitted to purchase Motrin from the prison commissary, Dr. McLaughlin did not renew his prescription for Motrin that expired on June 1, 2008.  (*See id.* at 6 of 21, ¶¶ 21-22).

Changes were made to two of Mr. Key's prescriptions on May 29, 2008.  (*See* Doc. # 94-

---

[4]      "In the early 1990s, Colorado state prisoners initiated a class action lawsuit alleging that state officials were committing ongoing violations of disabled prisoners' rights under the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983. In 2003, the parties entered into a consent decree, called a 'Remedial Plan,' setting forth the actions Defendants would take to bring the state prison system into compliance with the applicable statutes and establishing a procedure through which individual inmates could bring damage claims for injuries incurred."  *Montez v. Hickenlooper*, 640 F.3d 1126, 1129 (10th Cir. 2011).

4 at 20 of 21).  During an appointment with Dr. Fisher more than a year later, on July 16, 2009,

Mr. Key again requested and was denied a medical work restriction.  (*See* Doc. # 94-4 at 6 of

21, ¶ 25, 21 of 21).  Mr. Key did not have any medical work restrictions for the remainder of his

incarceration, until he was paroled on September 30, 2010.  (*See id.* at 6 of 21, ¶ 25).

The evidence does not demonstrate that Defendant McLaughlin was deliberately

indifferent to Mr. Key's serious medical needs on either of the two occasions he provided him

medical treatment.  Mr. Key's allegation that Defendant McLaughlin "prescribed a grossly

inadequate anti-flammatory [sic]" states nothing more than his disagreement with Dr.

McLaughlin's professional judgment.  Such disagreement does not support the deliberate

indifference component of Mr. Key's Eighth Amendment claim.  *See Perkins v. Kansas Dept. of*

*Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) ("A prisoner who merely disagrees with a

diagnosis or a prescribed course of treatment does not state a constitutional violation.").  Dr.

McLaughlin's decisions to remove the medical work restriction and not renew the prescription for

Motrin were matters within his professional medical judgment.  Mr. Key's challenge to Dr.

McLaughlin's exercise of medical judgment does not state an Eighth Amendment violation.  *See*

*Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be

negligence but is not a constitutional violation);  *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th

Cir. 2006) (prisoner's "contention that he had a right to a particular course of treatment" was

insufficient to show deliberate indifference);  *Jones v. Simmons*, No. 96-3059, 89 F.3d 850 (10th

Cir. June 24, 1996) (affirming district court's conclusion "that plaintiff had merely challenge[d] a

matter of medical judgment concerning the restrictions necessary to accommodate his

diagnosis, and, therefore, he failed to state a deliberate indifference claim.").

Nor does Mr. Key support an Eighth Amendment claim with his allegation that on May 21,

2008 Dr. McLaughlin "responded with pithy remarks on the order of 'you're in prison' and 'there

are other inmates in wheelchairs that would be glad to have the mobility you do' and you look

OK to me.' " (*See* Doc. # 18 at ¶ 23; Doc. # 104 at 5 of 7, ¶¶ 53-56).  Verbal harassment or

abuse by a prison official does not amount to a constitutional violation.  *McBride v. Deer*, 240

F.3d 1287, 1291 n. 3 (10th Cir. 2001).  To the extent that Mr. Key may be claiming that Dr.

McLaughlin was negligent in treating his medical needs, the "negligent failure to provide

adequate medical care, even one constituting medical malpractice, does not give rise to a

constitutional violation." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).  In sum, Dr.

McLaughlin is entitled to qualified immunity as to the remaining claim in the SAC.


Accordingly, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment

(filed September 21, 2012) (Doc. # 94) be GRANTED and judgment on the Second Amended

Complaint (filed July 23, 2010) (Doc. # 18) be entered in favor of Defendants and against

Plaintiff.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real

Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

20

right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 19th day of March, 2013.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge